UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN A. CRAIG # 381110,

                    Petitioner,            Case Number: 2:17-CV-12830
                                           HON. GEORGE CARAM STEEH
        v.

THOMAS MACKIE,

                    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS AND
## DENYING A CERTIFICATE OF APPEALABILITY

        Petitioner Kevin A. Craig, currently in the custody of the Michigan

Department of Corrections, filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  He challenges his convictions for

first-degree murder, Mich. Comp. Laws § 750.316, assault with intent to

commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm

during the commission of a felony, Mich. Comp. Laws § 750.227b.  For the

reasons explained below, the Court denies the petition and denies a

certificate of appealability.

## I.    Background

        Petitioner's convictions arise from a fatal shooting in Detroit.  He was

tried along with co-defendant, Donovan Young.  The Michigan Court of

Appeals summarized the evidence presented at trial as follows:

> Defendants' convictions arise from the shooting death of
> Antonio Turner and nonfatal gunshot injuries to Darneil
> Richardson on June 12, 2011, on Sorrento Street in Detroit.
> Richardson and defendant Craig were rival drug dealers.
> Richardson testified that he encountered defendant Craig on
> the street and the two became involved in an argument.  Turner
> and defendant Young also were present.  According to
> Richardson, defendant Young pointed a .357 caliber revolver at
> Turner's face, said "f* *k it," and pulled the trigger, but the
> revolver did not discharge.  Richardson then observed
> defendant Craig also pull out a gun.  Richardson and Turner
> both ran off. As Richardson was running, he heard gunshots
> and was shot in the leg. Turner was shot three times and died
> at the scene.
>
> A witness, Barbara Ingram, testified that she saw defendant
> Craig and another man both pull out guns, which were pointed
> at Turner.  After Turner put his hands up in the air, shooting
> started.  Ingram briefly ducked for cover, but then looked up
> again and saw Turner on the ground. Defendant Craig had left,
> but then returned and shot Turner.  Another witness, Ariel
> Sydes, testified that she heard a gunshot, looked outside, and
> saw defendant Craig, who was armed with a gun, chasing
> Richardson.  Turner was lying in the middle of the street.
> Neither defendant testified at trial.  Both defendants attacked
> the credibility of the prosecution witnesses and argued that the
> evidence failed to show that the two defendants were acting in
> concert and did not establish who actually shot the victims.

*People v. Young*, No. 310435, 2014 WL 3745186, at *1 (Mich. Ct. App. July

29, 2014).

Following a jury trial in Wayne County Circuit Court, Petitioner was

convicted and sentenced as follows: life imprisonment for first-degree

premeditated murder, 40 to 80 years for assault with intent to commit

murder, and two years for possession of a firearm during the commission of a felony.

The Michigan Court of Appeals affirmed the convictions on direct appeal. *Young,* 2014 WL 3745186, at *1 . The Michigan Supreme Court denied leave to appeal. *People v. Young*, 497 Mich. 972 (Mich. 2015).

Petitioner filed a motion for relief from judgment, which the trial court denied on January 14, 2016. (ECF No. 7-15.)  The Michigan Court of Appeals and Michigan Supreme Court both denied Petitioner leave to appeal. *People v. Craig,* No. 333561 (Mich. Ct. App. Sept. 30, 2016); *People v. Craig*, 500 Mich. 1000 (Mich. May 31, 2017).

Petitioner then filed this habeas petition seeking relief on these claims:

I.  The trial court abused its discretion in denying petitioner's motion for relief from judgment where it opined that petitioner's trial and appellate counsel did not provide ineffective assistance.

   a.  Whether the trial court abused its discretion in finding that appellate counsel was not ineffective for failing to raise that there was insufficient evidence to convict Mr. Craig?

   b.  Whether the trial court abused its discretion in concluding that counsel was not ineffective in failing to raise claim of judicial misconduct.

   c.  Whether the trial court abused its discretion in concluding that counsel was not ineffective in failing to raise claims of prosecutor misconduct?

    d.    Whether the trial court abused its discretion in concluding that counsel was not ineffective for failing to object to the jury instructions which eliminated any reference to a not guilty verdict, and instead directed a verdict of guilty?

    e.    Whether the trial court abused its discretion as a matter of law in concluding that counsel was not ineffective for failing to object to the introduction of "Jailhouse" phone calls which resulted in denying Appellant's right to confrontation?

II.    Petitioner was tried in violation of the jurisdictional bar [right to a speedy trial] applicable to the case under the Sixth Amendment to the U.S. Constitution.

III.    The trial court abused its discretion when, contrary to MCR 6.508(E), it failed to address all the claims raised in appellant's motion for relief from judgment.

## II.   Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Greene v. Fisher*, 565 U.S. 34, 38 (2011).  Section 2254(d) "does not require citation of [Supreme Court]

cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  *Id.*

## III.    Discussion

### A.    Procedural Default

Respondent argues that all but one of Petitioner's claims are procedurally defaulted.  Under the procedural default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  But "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351

F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  It may be more economical for the habeas court to simply review the merits of the petitioner's claims rather than to address "complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  In the present case, the Court finds it more efficient to proceed directly to the merits.

### B.    Sufficiency of the Evidence

Petitioner's first claim for relief concerns the sufficiency of the evidence.  He argues that the evidence was insufficient to support his first-degree murder conviction because the prosecution failed to prove the intent element.

Sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  On habeas review, the sufficiency of the evidence inquiry involves "two layers of deference": one to the jury verdict, and a second to the Michigan Court of Appeals' decision.  *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson,* 443 U.S. at 319) (emphasis in *Jackson*).  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, to convict a defendant of first-degree premeditated murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate.  *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995).  Michigan caselaw requires two prerequisites for a finding of premeditation and deliberation: (1) the time "between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a second look;" and (2) "there must be evidence that the defendant had – and took– a moment for calm reflection before the murder." *Davenport v. MacLaren*, — F.3d —, 2020 WL 3529581, *11 (6th Cir. 2020) (internal quotation omitted).

To convict a defendant under an aiding and abetting theory, a prosecutor must show: (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave

encouragement that assisted the commission of the crime; and (3) the

defendant intended the commission of the crime or knew that the principal

intended to commit the crime at the time he gave aid and encouragement.

*Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007) (citing *People v.*

*Carines*, 597 N.W.2d 130, 135 (1999)). An "aider and abettor's state of

mind may be inferred from all the facts and circumstances. Factors that

may be considered include a close association between the defendant and

the principal, the defendant's participation in the planning or execution of

the crime, and evidence of flight after the crime." *Carines*, 460 Mich. at

758. "The quantum of aid or advice is immaterial as long as it had the effect

of inducing the crime." *People v. Lawton*, 196 Mich. App 341, 352 (1992).

The trial court denied this claim on collateral review, holding:

This Court finds no merit in defendant's argument. Defendant
states in his brief that he was arguing with Darneil Richardson,
when suddenly his co-defendant, Donovan Young, came from
around the corner with a handgun and start[ed] shooting at
Antonio Turner, decedent. Defendant in his brief claims he
then began shooting randomly into the crowd, but Mr.
Richardson's testimony is that defendant chased him and
began shooting at him directly, and the only targets [were] him
and [Turner]. Thus, defendant's action[s] show both
premeditation and deliberation, as [Turner] was shot three
times, once in the leg, once in the chest and once in the head;
while Mr. Richardson was shot once in the left leg, with the
bullet traveling through the left leg and embedding itself in his
right leg. Further, defendant's murder conviction is valid based
upon testimony from Barbara Ingram, who testified that she
saw defendant pull out a gun, and observed Mr. Turner, [] with

his hands up, then Ingram briefly ducked for cover, but then looked up again and saw Turner on the ground.  Defendant had left the scene, but then returned and shot Turner while he was on the ground lying in a prone position.  Defendant's actions as to each victim show both premeditation and deliberation.  As such this Court finds his murder conviction is valid.

(ECF No. 7-15, PageID.1904-05.)

Petitioner argues that the evidence failed to establish the required intent element.  He highlights portions of the trial testimony which he believes establish the lack of intent to harm.  He maintains that evidence of the randomness of the shots he fired failed to establish an intent to kill.  But Barbara Ingram testified that she saw Petitioner return after the initial round of shooting.  (ECF No. 7-10, PageID.1522.)  Ingram then saw Petitioner stand over Antonio Turner, who was lying in the street, and fire a gunshot into the upper part of Turner's body.  (*Id.*)  If the jury credited Ingram's testimony, as it was free to do, the evidence presented was more than sufficient to support the jury's verdict and the state court's decision was not contrary to, or an unreasonable application of, Supreme Court precedent.

## C.    Judicial Misconduct

Next, Petitioner argues that he was denied his right to a fair trial by several of the trial court's evidentiary rulings, which, he maintains, evidenced judicial bias.

An impartial judge is a necessary component of a fair trial.  *In re*

*Murchison*, 349 U.S. 133, 136 (1955).  The Supreme Court explained the

appropriate measure of  judicial conduct as follows:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 554 (1994).

The state trial court held that the trial court's evidentiary rulings were

not an abuse of discretion and held that there was no evidence of judicial

bias.  (ECF No. 7-15, PageID.1906.)

On habeas review the inquiry focuses on whether the trial judge's

conduct rendered the trial fundamentally unfair.  "To violate a defendant's

right to a fair trial, a trial judge's intervention in the conduct of a criminal

trial would have to reach a significant extent and be adverse to the

defendant to a substantial degree."  *McBee v. Grant*, 763 F.2d 811, 818

(6th Cir. 1985).  Although Petitioner disagrees with many of the trial court's

rulings, he has not shown that the judge relied on extrajudicial sources in

rendering his decisions or that he showed any degree of favoritism for the

prosecution or antagonism for the defense.  The trial transcript shows the trial judge ruled carefully on objections.  The Court sees no bias in the trial court's rulings.  The Court finds that the state court's decision was not objectively unreasonable or contrary to Supreme Court precedent. Consequently, Petitioner fails to show that trial counsel was ineffective in failing to object.

### D.    Prosecutorial Misconduct

In his next claim, Petitioner alleges that his trial attorney was ineffective in failing to object to the prosecutor's multiple instances of misconduct.  Specifically, he alleges that the prosecutor improperly vouched for the credibility of prosecution witnesses and misstated the evidence in her closing argument.

A prosecutor's improper comments violate a criminal defendant's constitutional rights if they "'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned."  *Id.* at 181 (internal quotation omitted).  To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial

fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (alteration in original).  "That leeway increases in assessing a state court's ruling under AEDPA," because the court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017) (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

The trial court's decision denying Petitioner's motion for relief from judgment is the last reasoned state court decision addressing Petitioner's claim.  The trial court held that the prosecutor did not improperly vouch for the credibility of prosecution witnesses. (ECF No. 7-15, PageID.1906-07.) Instead, the prosecutor argued that, based upon the facts, certain witnesses were credible.  (*Id.*)  The trial court further held that the prosecutor did not misstate the evidence in her closing argument.  (*Id.*)

The state court's decision is not contrary to, or an unreasonable

application of, the *Darden* standard. The prosecutor did not argue that she possessed any special knowledge about the truth of the prosecution witnesses' testimony. Rather, she argued that the consistency of the testimony and the physical evidence supported the testimony of the prosecution's witnesses. This was not improper vouching. Therefore, counsel was not ineffective in failing to object.

Petitioner also asserts that the prosecutor misstated the evidence. First, he claims that the prosecutor improperly stated that Petitioner knew Young had drawn his gun before drawing his own gun. Petitioner mischaracterizes the prosecutor's argument. She argued that Petitioner pulled his gun after seeing Young "showing up for backup." (ECF No. 7-12, PageID.1760.) Her argument was supported by the evidence and, therefore, not improper.

Second, Petitioner argues that the prosecutor improperly stated that Petitioner stood over Turner and shot him when the medical examiner's report found no evidence of close-range firing. In fact, eyewitness Barbara Ingram testified that she saw Craig return to Turner, stand over him, and fire a gunshot into Turner's upper body. The prosecutor did not commit misconduct by relying on Ingram's testimony where she did not misstate that testimony. Counsel was not ineffective for failing to object to this

-14-

proper argument.

### E.    Jury Instructions

Next, Petitioner argues that his attorney was ineffective in failing to object to the jury instructions because the instructions failed to offer the option of a not-guilty verdict and essentially directed the jurors to render a guilty verdict.

To obtain habeas relief based on an allegedly improper jury instruction, a petitioner must show that the instructions, "'taken as a whole, [were] so infirm that they rendered the entire trial fundamentally unfair.'" *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) (quoting *Austin v. Bell*, 126 F.3d 843, 846–47 (6th Cir. 1997)).  The trial court held that the "instructions, when viewed as a whole, adequately protected defendant's rights."  (ECF No. 7-15, PageID.1908.)  The court concluded that the "[u]nder the instructions given, the jury would not have convicted defendant without concluding that he performed acts or gave encouragement that assisted the commission of the crime."  (*Id.*)

The state court's decision is not contrary to, or an unreasonable application of, clearly established federal law.  For the first-degree murder charge and each of the lesser offenses, the trial court instructed the jurors that the prosecution must prove each element of a crime beyond a

reasonable doubt.  Nothing in the instructions could be read to mean that the jury did not have the option of finding Petitioner not guilty of any or all of the charged crimes.  The state court, therefore, reasonably rejected this claim.  Because the instructions were not improper, counsel was not ineffective in failing to object.

### F.    Confrontation Clause Claim

Petitioner next argues that the trial court denied him his right to confrontation when the court admitted into evidence the content of his jail phone calls and a 911 call.

First, the state court held that the telephone conversations were properly admitted as admissions by a party opponent because they were recordings of Petitioner making statements against his own interest.  (ECF No. 7-15, PageID.1908-09. )  Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court.  *See Crawford v. Washington*, 541 U.S. 36 (2004). Admissions by a party-opponent are not testimonial hearsay.  The phone calls, therefore, are not barred by the Confrontation Clause because *Crawford* applies only to testimonial hearsay.

Petitioner also claims that admission of Ingram's 911 call violated the Confrontation Clause.  The state court held that the call was properly admitted under the excited utterance exception to the hearsay rule.  (ECF No. 7-15, PageID.1909.)  "Statements taken by police officers in the course of interrogations are ... testimonial."  *Crawford*, 541 U.S. at 52.  Statements are non-testimonial when they are "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency."  *Davis v. Washington*, 547 U.S. 813, 822 (2006).  When "the primary purpose of an interrogation is to respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not within the scope of the Clause."  *Michigan v. Bryant*, 562 U.S. 344, 358 (2011).

Here, Ingram called 911 immediately following the shooting as she saw Petitioner driving away from the scene.  Her statements to the 911 operator were non-testimonial because they were made in the context of an ongoing emergency. The admission of the tape did not implicate the Confrontation Clause.

Because Petitioner's rights under the Confrontation Clause were not implicated by the admission of this evidence, Petitioner's trial counsel was

not ineffective for failing to object.

**G.    Speedy Trial Claim**

Petitioner argues his defense counsel was ineffective in failing to move for dismissal of the charges based upon a violation of his right to a speedy trial.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial.  U.S. Const. amend. VI.  Courts must balance the following four factors in determining whether a defendant's constitutional right to a speedy trial has been violated:  (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to speedy trial; and (4) prejudice to the defendant.  *Barker v. Wingo*, 407 U.S. 514, 528 (1972).  The Sixth Amendment's Speedy Trial Clause does not extend to the period prior to arrest.  *United States v. Marion*, 404 U.S. 307, 321 (1971); *United States v. MacDonald,* 456 U.S. 1, 7 (1982). "[U]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other facts that go into the balance."  *Barker*, 407 U.S. at 530.  Generally, depending on the nature of the charges, a delay that approaches one year is presumptively prejudicial.  *Doggett v. United States,* 505 U.S. 647, 652 n. 1 (1992).

The trial court's denial of this claim is based upon a mistake of fact.

The trial court found no speedy trial violation based on the mistaken belief that Petitioner was released on bond pending his trial date.  (ECF No. 7-15, PageID.1903.)  In fact, the trial court denied Petitioner release on bond. (ECF No. 7-7, PageID.1331-32.)  Nevertheless, even under a *de novo* standard of review, Petitioner is not entitled to habeas corpus relief.

Petitioner fails to demonstrate that his delay was "presumptively prejudicial," which requires a delay greater than one year.  *Barker*, 407 U.S. at 530.  *See also United States v. Ferreira*, 665 F.3d 701, 705 (6th Cir. 2011) ("A delay of one year or more crosses the threshold and triggers analysis of the remaining *Barker* factors.") (citation omitted).  Petitioner was in custody for just over 7 months when his trial commenced.  The delay falls far short of one that is presumptively prejudicial.  The Court need not inquire further.  Because Petitioner was not denied his right to a speedy trial, trial counsel was not ineffective for failing to move for dismissal of the charges on speedy trial grounds.

### H.   Ineffective Assistance of Appellate Counsel

Petitioner claims that his appellate attorney was ineffective in failing to raise on direct appeal the claims raised in this habeas petition.  A petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745,

754 (1983).  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The claims raised in this petition and on collateral review in state court are meritless.  Appellate counsel need not raise non-meritorious claims on appeal.  *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Accordingly, the Court will deny habeas corpus relief on this claim.

## I.    Trial Court's Decision

Finally, Petitioner argues that the trial court abused its discretion when, contrary to Mich. Ct. R. 6.508(E) it failed to address all the claims raised in Petitioner's motion for relief from judgment.

"A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Habeas relief also may not be granted "for alleged deficiencies in a state's post-conviction procedures because such claims relate to a state civil matter, not to the custody of a defendant."  *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002). The allegation that the trial court violated Rule 6.508(E) is not cognizable on habeas review.

## IV.   Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253.  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the Court will deny a certificate of appealability.

## V.    Petitioner's Motions

Also before the Court are Petitioner's motion for appointment of counsel and motion for appeal bond.  There exists no constitutional right to the appointment of counsel in civil cases, and the court has broad discretion in determining whether counsel should be appointed.  *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (holding that a habeas petitioner is not entitled to the appointment of counsel to assist in habeas corpus proceedings).  The Court finds that, given the denial of the petition, there is

no need for appointment of counsel.

In his motion for appeal bond, Petitioner seeks release on bond under Rule 23(c) of the Federal Rules of Appellate Procedure, which provides that when a decision ordering the release of a prisoner is on appeal, the prisoner must be released unless the court orders otherwise. This rule creates "a presumption of release pending appeal where a petitioner has been granted habeas relief." *O'Brien v. O'Laughlin*, 557 U.S. 1301 (2009) (citing *Hilton v. Braunskill*, 481 U.S. 770, 774 (1987)), Fed. Rule App. Proc. 23(c). Here, Rule 23(c) is inapplicable because the Court has denied relief.

The basis for Petitioner's motion is the ongoing COVID-19 pandemic. The motion is unrelated to the claims raised in his habeas corpus petition and, therefore, not properly field in this presently closed case. *See, e.g., Smith v. Zuercher*, No. 7:08-cv-229, 2009 WL 499112, *4, n.2 (E.D. Ky. Feb. 27, 2009) (petitioner not permitted to "piggy-back" separate, unrelated claims onto habeas petition). To the extent Petitioner seeks relief under 42 U.S.C. § 1983, he must proceed in a new, separate action.

## VI.  Conclusion

The petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH**

PREJUDICE.

Petitioner's motion for appointment of counsel (ECF No. 13) and motion for appeal bond (ECF No. 14) are **DENIED**.

**SO ORDERED**.

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: July 15, 2020

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 15, 2020, by electronic and/or ordinary mail and also on Kevin A. Craig #381110, Saginaw Correctional Facility, 9625 Pierce Road, Freeland, MI 48623.

s/Brianna Sauve
Deputy Clerk